TIMOTHY COURCHAINE
United States Attorney
District of Arizona
MATTHEW WILLIAMS
Assistant United States Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Matthew.Williams3@usdoj.gov
Attorneys for Plaintiff

LORINDA LARYEA
Acting Chief, Fraud Section
United States Department of Justice
JAMES V. HAYES
Assistant Chief
S. BABU KAZA
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue
Washington, DC 20005
Email: James.Hayes@usdoj.gov
Email: Sridhar.Babu.Kaza@usdoj.gov
Telephone: 202-531-1481
Attorneys for Plaintiff

☑ FILED ___ LODGED
___ RECEIVED ___ COPY

JUN 1 1 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ISG___ Z DEPUTY

**SEALED**

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>vs.<br><br>Farrukh Jarar Ali,<br><br>        Defendant. | No. **CR-25-00882-PHX-DWL (ESW)**<br><br>**INDICTMENT**<br><br>VIO: 18 U.S.C. § 1349<br>(Conspiracy)<br>Count 1<br><br>18 U.S.C. §§ 1343, 2<br>(Wire Fraud)<br>Counts 2-4<br><br>18 U.S.C. §§ 1957, 2<br>(Transactional Money Laundering)<br>Count 5<br><br>18 U.S.C. § 981<br>18 U.S.C. § 982<br>21 U.S.C. § 853<br>28 U.S.C. § 2461(c)<br>Forfeiture Allegations |

**THE GRAND JURY CHARGES:**

At all times material to this indictment, within the District of Arizona and elsewhere:

## INTRODUCTION

1. Between on or about April 1, 2021, and on or about July 1, 2023, FARRUKH JARAR ALI, acting primarily though his Pakistan-based company, ProMD Solutions LLC ("ProMD"), falsely and fraudulently billed the Arizona Health Care Cost Containment System ("AHCCCS") approximately $650 million for behavioral healthcare services purportedly provided by outpatient treatment centers, to include but not limited to outpatient treatment centers Tusa Integrated Clinic LLC ("TUSA"), owned and operated by Rita Anagho; Community Hope Wellness Center LLC ("CHWC"), owned and operated by Daud Koleosho and Adam Mutwol; and Company 1 Counseling LLC ("Company 1"), owned and operated by Individual 2. ALI primarily targeted AHCCCS's American Indian Health Program ("AIHP"), among other programs, and billed AHCCCS for services that were never provided and not provided as represented.

**Background on the Arizona Health Care Cost Containment System**

2. AHCCCS was Arizona's Medicaid agency that offered health care programs to Arizona residents. AHCCCS contracted with several health plans to provide covered services and worked with medical providers, such as doctors, hospitals, pharmacies, specialists, and counselors, to provide care for AHCCCS members. Covered services included, among other services, behavioral health counseling services, such as counseling and substance abuse treatment.

3. AHCCCS administered Medicaid health care programs to Arizona residents. The federal government paid states, including Arizona, for the majority of Medicaid program expenditures. Among other programs and plans, AHCCCS provided care through AIHP, through which AHCCCS-enrolled Native Americans could receive health care services, including preventive and behavioral health care services, on a fee-for-service basis.

4. All medical providers who served AHCCCS members were required to be screened and enrolled as an approved provider before AHCCCS paid the provider for medical services provided to its members. For a medical professional to become a provider in the AHCCCS program, the provider must have truthfully and accurately completed a provider enrollment paperwork package and submitted it to AHCCCS. Officials at AHCCCS reviewed such applications and, if they approved the application, the medical provider was then permitted to begin providing medical services to AHCCCS members and receive payments from AHCCCS for medical services rendered.

5. As part of their AHCCCS application, providers must have filled out and signed a provider participation agreement that included a certification in which they agreed to abide by all laws, regulations, and policies governing AHCCCS. Rita Anagho filled out and signed the provider participation agreement and certification for TUSA, which was submitted on or about July 13, 2022. Daud Koleosho filled out and signed the provider participation agreement and certification for CHWC, which was submitted on or about July 18, 2022. Adam Mutwol signed a separate provider participation agreement for an additional CHWC location on or about January 19, 2023. Individual 2 filled out and signed the provider participation agreement and certification for Company 1, which was submitted on or about September 29, 2022.

6. After an approved AHCCCS provider provided services to an AHCCCS member, the provider typically submitted a claim for payment through an online portal operated by AHCCCS. As part of such a claim submission, AHCCCS required the provider to disclose the dates services were provided, codes that reflect the type of services provided, as well as the total amount of reimbursement sought by the provider.

7. AHCCCS typically paid its providers either by check or by electronically transmitting funds to a bank account.

8. AHCCCS required providers to be registered. TUSA was registered under AHCCCS Provider ID ending x9406 and National Provider ID ending x4763. CHWC was registered under AHCCCS Provider ID ending in x4384 and National Provider ID ending

in x3641, with its additional location registered under AHCCCS Provider ID ending in x2926 and National Provider ID ending in x9367. Company 1 was registered under AHCCCS Provider ID ending in x6044 and National Provider ID ending in x6608.

9. AHCCCS was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined in Title 42, United States Code, Section 1320(a)-7b(f).

10. AHCCCS-covered services, including behavioral health services, must have been medically necessary, cost effective, federally reimbursable, and state reimbursable. Arizona Administrative Code R9-22-202.

11. Outpatient behavioral health services were behavioral health services provided by an outpatient treatment center ("OTC"). OTCs were health care institutions without inpatient beds that provided physical health services or behavioral health services for the diagnosis and treatment of patients. Arizona Administrative Code R9-10-101.

12. OTC services included therapy in the form of intensive outpatient services ("IOP") and outpatient services ("OP"). IOP and OP patients attended facilities on an ongoing basis where treatment was rendered, generally in the form of group and individual therapy sessions. The distinction among the two different treatment plans relates to, among other things, the amount of therapy time on a daily or weekly basis.

**The Defendant**

13. FARRUKH JARAR ALI resided outside the United States, in Pakistan and the United Arab Emirates. ALI owned and directed the operations of ProMD and was listed as the statutory agent for TUSA on its application to be licensed as an OTC with the Arizona Department of Health Services.

**Individuals and Entities Involved**

14. ProMD was organized in Arizona on or about August 5, 2021, but operated from Pakistan. According to its website, ProMD provided credentialing and enrolling, medical coding, and billing services for medical practices. ProMD provided such services

1  for TUSA, CHWC, and Company 1 during the period of the conspiracy, and was listed as
2  the statutory agent for TUSA in its formation documents.

3      15.    Individual 1 was employed by ProMD.

4      16.    Rita Anagho resided in Arizona. Anagho directed the day-to-day operations
5  of TUSA.

6      17.    TUSA, an OTC, was organized in Arizona on or about May 20, 2022, as a
7  domestic LLC providing "Health Care and Social Assistance." Rita Anagho was listed in
8  the Arizona Corporation Commission documents as the sole member, principal, and
9  organizer of TUSA. The address for TUSA was listed as **** South Rural Road, Tempe,
10 Arizona, 85282.

11     18.    TUSA applied to the Arizona Department of Health Services for a license as
12 an OTC on or about May 20, 2022, and this application was received on or about June 3,
13 2022. Rita Anagho was listed as the Chief Administrative Officer for TUSA on this
14 application. Rita Anagho signed this application as TUSA's owner. TUSA was licensed
15 as an OTC effective on June 28, 2022.

16     19.    Daud Koleosho and Adam Mutwol resided in Arizona and directed the day-
17 to-day operations of CHWC.

18     20.    CHWC, an OTC, was organized in Arizona on or about March 18, 2022, as
19 a domestic LLC providing "Health Care and Social Assistance." Daud Koleosho and
20 Adam Mutwol were listed in the Arizona Corporation Commission documents as managers
21 and organizers of CHWC. The address for CHWC was listed as **** East Pollack Street,
22 Phoenix, Arizona, 85042.

23     21.    CHWC applied to the Arizona Department of Health Services for a license
24 as an OTC at its Phoenix address on or about June 9, 2022. Daud Koleosho was listed as
25 the CHWC Chief Administrative Officer, and Adam Mutwol was listed as the CHWC
26 Statutory Agent on this application. CHWC was licensed as an OTC effective on June 29,
27 2022. CHWC subsequently applied for a license as an OTC for a Mesa, Arizona location
28 on or about October 20, 2022. Daud Koleosho was listed as the CHWC Chief

1  Administrative Officer and Statutory Agent on this application. CHWC was licensed as
2  an OTC at the Mesa address effective on November 30, 2022.

3  22.  Individual 2 resided in Arizona and owned, operated, and directed the day-
4  to-day operations of Company 1.

5  23.  Company 1, an OTC, was organized in Arizona on or about August 9, 2022,
6  as a domestic LLC providing "Health Care and Social Assistance." Individual 2 was listed
7  in the Arizona Corporation Commission documents as the statutory agent and member of
8  Company 1.

9  24.  Company 1 applied to the Arizona Department of Health Services for a
10 license as an OTC to operate at **** North 16th Street, Suite *** Room ***, Phoenix,
11 Arizona 85020. Company 1 was licensed as an OTC effective on September 6, 2022.

## Investigation into Widespread AHCCCS Fraud

13 25.  The AHCCCS Office of Inspector General ("OIG") began investigating a
14 widespread fraud scheme in which OTCs recruited Native Americans and other individuals
15 to exploit the AIHP under AHCCCS. Because it was easier to enroll as a provider with
16 AIHP than some other AHCCCS insurance programs, and because AIHP's reimbursement
17 rates for certain behavioral health services were sometimes higher than those of other
18 programs, these OTCs preferred patients who were enrolled in AIHP. In some cases, these
19 OTCs identified potential patients and enrolled the patients in AIHP or had the patients
20 switch their existing AHCCCS insurance plan to AIHP, regardless of whether the patient
21 was Native American.

## Funds Received from AHCCCS

23 26.  TUSA's corporate bank accounts for the relevant period were three J.P.
24 Morgan Chase accounts ending x2208, x2216, and x3092, and one Bank of America
25 account ending x3081. Bank records for TUSA's corporate accounts show deposits of
26 approximately $55.4 million in income from AHCCCS programs during the relevant
27 period. Rita Anagho and one other TUSA employee were the sole signatories on these
28

bank accounts, and Rita Anagho beneficially owned and controlled, directly and indirectly, the payments received from AHCCCS.

27. CHWC's corporate bank accounts for the relevant period were Bank of America accounts ending in x0106, x0203, and x0326, and Arizona Financial Credit Union accounts ending in x0009 and x9950. Bank records for CHWC's corporate accounts show deposits of approximately $51.6 million from AHCCCS programs during the relevant period. Daud Koleosho and Adam Mutwol were signatories on these bank accounts and beneficially owned and controlled, directly and indirectly, the payments received from AHCCCS, which they evenly divided between themselves.

28. Company 1's corporate bank account for the relevant period was a Bank of America account ending in x2381. Bank records for Company 1's corporate account show deposits of approximately $36.7 million from AHCCCS programs during the relevant period. Individual 2 and his wife were the signatories on Company 1's corporate bank account and beneficially owned and controlled, directly and indirectly, the payments received from AHCCCS.

29. ProMD maintained multiple corporate bank accounts, to include Brex, Inc. accounts ending in x3362 and x7382. Bank records for ProMD's Brex, Inc. accounts show deposits of approximately $25 million during the relevant period from various OTCs that used ProMD to bill AHCCCS. ALI was the signatory on these bank accounts, and beneficially owned and controlled, directly and indirectly, the payments received from approximately 41 OTCs, including TUSA, CHWC, and Company 1.

## COUNT 1
### Conspiracy
### (18 U.S.C. § 1349)

30. The factual allegations above are incorporated for Count 1.

31. Beginning at a time unknown to the grand jury, but at least as early as on or about April 1, 2021, and continuing through on or about July 1, 2023, in the District of Arizona and elsewhere, Defendant FARRUKH JARAR ALI, Individual 1, Rita Anagho,

Daud Koleosho, Adam Mutwol, and Individual 2, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the grand jury, knowingly and willfully agreed and conspired with each other and others to commit the following offenses against the United States: wire fraud, in violation of 18 U.S.C. § 1343; and health care fraud, in violation of 18 U.S.C. § 1347.

### Purpose of the Conspiracy

32. It was a purpose of the conspiracy for the Defendant, Individual 1, Rita Anagho, Daud Koleosho, Adam Mutwol, and Individual 2, and their co-conspirators to unjustly enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to AHCCCS; (b) concealing the submission of false and fraudulent claims to AHCCCS, and the receipt and transfer of fraud proceeds; and (c) diverting the fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy and Scheme

33. The manner and means used by FARRUKH JARAR ALI, Individual 1, Rita Anagho, Daud Koleosho, Adam Mutwol, Individual 2, and others, individually and through the entities described above, to effect the objects of the conspiracy and scheme to defraud, included the following:

    a. FARRUKH JARAR ALI established, operated, and controlled ProMD, which was purportedly in the business of establishing and credentialing OTCs, and medical billing. Individual 1 acted as FARRUKH JARAR ALI's liaison with OTCs and managed communications with the OTCs.

    b. Rita Anagho established, operated, and controlled TUSA; Daud Koleosho and Adam Mutwol established, operated, and controlled CHWC; and Individual 2 established, operated, and controlled Company 1. Each of these OTCs were purportedly in the business of providing addiction treatment services for persons suffering from alcohol and drug addiction.

c. To obtain and retain patients for TUSA, CHWC, and Company 1 whose insurance, including AHCCCS, could be billed for substance abuse treatment services, Rita Anagho, Daud Koleosho, Adam Mutwol, Individual 2, and their co-conspirators offered and paid illegal kickbacks and bribes to owners of residences that housed substance abuse treatment patients, in exchange for these residence owners referring patients for treatment to TUSA CHWC, and Company 1. Many of the patients recruited for TUSA, CHWC, and Company 1 in this manner were Native Americans and/or other individuals who were enrolled in AIHP.

d. Rita Anagho, Daud Koleosho, Adam Mutwol, Individual 2, and their co-conspirators paid illegal kickbacks and bribes that varied based on the volume and value of the referred patients, including paying more money to the residence owners in exchange for patients with AIHP insurance compared to patients with other plans because the reimbursement from AHCCCS for these patients was generally higher.

e. FARRUKH JARAR ALI, Individual 1, and others at ProMD entered into agreements with the OTCs owned and operated by Rita Anagho, Daud Koleosho, Adam Mutwol, and Individual 2, namely TUSA, CHWC, and Company 1, in which ProMD agreed to bill AHCCCS for addiction treatment services billed by these OTCs purportedly provided to addiction treatment patients, many of them enrolled in AIHP, in exchange for 5% of the amounts paid by AHCCCS to TUSA, CHWC, and Company 1. FARRUKH JARAR ALI, through ProMD, reached similar agreements with approximately 40 other OTCs in the Phoenix, Arizona area.

f. FARRUKH JARAR ALI, Individual 1, Rita Anagho, Daud Koleosho, Adam Mutwol, Individual 2, and their co-conspirators submitted and caused others to submit, via interstate wire communications, false and fraudulent claims to AHCCCS for behavioral health substance abuse treatment therapy services that were not provided, were not provided as billed, were not provided by qualified

personnel, were so substandard that they failed to serve a treatment purpose, were not used or integrated into any treatment plan, and/or were medically unnecessary.

g. FARRUKH JARAR ALI, Individual 1, Rita Anagho, Daud Koleosho, Adam Mutwol, Individual 2, and their co-conspirators falsified and altered, and caused the falsification and alteration, of therapy notes reflecting that patients attended therapy when they did not and/or reflecting that therapy was provided when it was not.

h. FARRUKH JARAR ALI, Individual 1, Rita Anagho, and their co-conspirators submitted and caused the submission to AHCCCS, via interstate wire communications, of false and fraudulent claims in the amount of approximately $69,692,496 for TUSA services that were procured through the payment of illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and not provided as represented. AHCCCS paid the approximate amount of $55,368,889 to TUSA's corporate accounts for these false and fraudulent claims.

i. FARRUKH JARAR ALI, Individual 1, Daud Koleosho, Adam Mutwol, and their co-conspirators submitted and caused the submission of false and fraudulent claims, to AHCCCS, via interstate wire communications, in the amount of approximately $57,737,196 for CHWC services that were procured through the payment of illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and not provided as represented. AHCCCS paid the approximate amount of $51,666,140 to CHWC's corporate accounts for these false and fraudulent claims.

j. FARRUKH JARAR ALI, Individual 1, Individual 2, and their co-conspirators submitted and caused the submission of false and fraudulent claims, to AHCCCS, via interstate wire communications, in the amount of approximately $44,920,644 for Company 1 services that were procured through the payment of illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and not provided as represented. AHCCCS paid the approximate amount of

$36,678,016 to Company 1's corporate account for these false and fraudulent claims.

k.  In the same manner, through approximately 38 additional OTCs for which ProMD served as the biller, in addition to the OTCs of TUSA, CHWC, and Company 1, FARRUKH JARAR ALI, submitted and caused the submission of false and fraudulent claims, to AHCCCS via interstate wire communications, in the amount of approximately $650 million for services that were procured through the payment of illegal kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and not provided as represented.  AHCCCS paid these 41 OTCs approximately $564 million for these false and fraudulent claims.

All in violation of 18 U.S.C. § 1349.

## COUNTS 2-4
### Wire Fraud
### (18 U.S.C. §§ 1343, 2)

34.  The factual allegations above are incorporated for Counts 2-4.

35.  Beginning at a time unknown to the grand jury, but at least as early as July 1, 2021, and continuing through at least as late as July 31, 2023, in the District of Arizona and elsewhere, FARRUKH JARAR ALI, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the grand jury, aiding and abetting each other, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment of material facts, money and property, through the use of wire communication in interstate or foreign commerce.

36.  On or about the dates set forth below, for the purpose of executing the scheme and artifice, FARRUKH JARAR ALI and others did knowingly transmit and caused be transmitted by means of wire communication in interstate commerce to and from the District of Arizona the signal and sounds described below:

| Ct | Patient | Date | OTC | Description |
|---|---|---|---|---|
| 2 | B.F. | 12/10/2022 | Company 1 | Claims Submission to AHCCCS for $446 |
| 3 | A.P. | 12/13/2022 | CHWC | Claims Submission to AHCCCS for $669 |
| 4 | T.Y. | 12/15/2022 | TUSA | Claim Submission to AHCCCS for $1,220 |

All in violation of 18 U.S.C. §§ 1343, 2.

## COUNT 5
### Transactional Money Laundering
### (18 U.S.C. §§ 1957, 2)

37. The factual allegations above are incorporated for Count 5.

38. On or about the date listed below, FARRUKH JARAR ALI, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the grand jury, aiding and abetting each other, in the District of Arizona and elsewhere, knowingly engaged and attempted to engage in the following transaction in the United States with criminally derived property of a value exceeding $10,000, derived from specified unlawful activity, namely, wire fraud, in violation of 18 U.S.C. § 1343; health care fraud, in violation of 18 U.S.C. § 1347; and conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349:

| Count | Approx. Date | Approx. Amount | Transaction (Brex Inc.) |
|---|---|---|---|
| 5 | 3/17/2023 | $2,988,000 | FARRUKH JARAR ALI wired the funds to a real estate broker for purchase of a house located in a golf estate in Dubai, United Arab Emirates |

In violation of 18 U.S.C. §§ 1957, 2.

## FORFEITURE ALLEGATIONS

39. The factual allegations above are incorporated for forfeiture. The grand jury further realleges and incorporates the allegations of Counts 1 through 5 of this indictment, which are incorporated by reference as though fully set forth herein.

40. Pursuant to 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c), upon conviction of one or more of the offenses alleged in Counts 1 through 5 above, Defendant FARRUKH JARAR ALI shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offense(s), or in any property traceable to such property involved in the offense(s), including the following: (a) all money or other property that was the subject of each transaction or transfer in violation of a statute listed in 18 U.S.C. § 982; (b) all other property constituting proceeds obtained as a result of those violations; and (c) all property used in any manner or part to commit or to facilitate the commission of those violations. Such property includes, but is not limited to, a sum of money equal to at least $24,563,434 million in U.S. currency, representing the amount of proceeds ALI was paid in connection with the offenses charged.

41. If any of the forfeitable property, as a result of any act or omission by any Defendant,

    a. cannot be located upon the exercise of due diligence,

    b. has been transferred, sold to, or deposited with a third party,

    c. has been placed beyond the jurisdiction of the court,

    d. had been substantially diminished in value, or

    e. has been commingled with other property and cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of that Defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL

//s//
FOREPERSON OF THE GRAND JURY
Date: June 11, 2025

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

//s//
MATTHEW WILLIAMS
Assistant U.S. Attorney

LORINDA LARYEA
Acting Chief, Fraud Section
United States Department of Justice

//s//
JAMES V. HAYES
Assistant Chief
S. BABU KAZA
Trial Attorney